UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| **ALVIN CALHOUN,**<br><br>PLAINTIFF<br><br>v.<br><br>**MM GUNTER & SON, INC.**<br><br>DEFENDANT. | **Civil Action No. 2:20-CV-00609**<br><br>COMPLAINT FOR DAMAGES<br>RACE DISCRIMINATION<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Alvin Calhoun ("Coulhoun" or "Plaintiff") submits the following Complaint against MM Gunter & Son, Inc. ("MM Gunter" or "Defendant") for its violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981.[1]

### PARTIES

1. Mr. Calhoun is an individual domiciled in Virginia.

2. MM Gunter is a stock corporation organized under Virginia law with its principal place of business located in Virginia Beach, Virginia. MM Gunter is engaged in an industry affecting commerce and employs more than 15 employees.

### JURISDICTION & VENUE

3. This Court has subject matter jurisdiction over Calhoun's claims pursuant to 28 U.S.C. § 1331.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because MM Gunter maintains and administers the employment records relevant to this action in its principal office

---

[1] The law firm of Pierce McCoy, PLLC was only recently retained to represent Mr. Calhoun in this civil rights action and files this Complaint so that Mr. Calhoun's Title VII claim does not expire under the statute's 90-day statute of limitations period. The firm intends to file an amended complaint on Calhoun's behalf once the firm is able to complete its investigation into the case.

located in Virginia Beach, Virginia and a substantial part of the events or omissions giving rise to this action took place in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. On November 19, 2019, Mr. Calhoun filed a charge of discrimination against MM Gunter with the Equal Employment Opportunity Commission ("EEOC") asserting a claim of race discrimination.

6. On September 3, 2020, the EEOC mailed Calhoun a Notice of Right to Sue. Mr. Calhoun received the EEOC notice the following week.

7. Accordingly, Calhoun has exhausted his administrative remedies with respect to these claims under 42 U.S.C. §§ 17117 and 2000e-5.

## FACTUAL ALLEGATIONS

8. MM Gunter is an excavation, site work, and underground utility contractor with a single office located in Virginia Beach, Virginia.

9. At all relative times, MM Gunter employed, and continues to employ, a Caucasian superintendent named Rex Beach. Upon information and belief, Mr. Beach, as the superintendent, holds the top construction position within the company's hierarchy of positions, which, in descending order, also included several construction foremen, and then teams of laborers.

### Rex Beach Maintains a Work Environment Permeated with Racist Epithets and Hostile Treatment of Black Employees

10. Under Rex Beach's leadership, MM Gunter maintained a work environment on the job site where racial epithets about African Americans were routinely uttered, including by Beach.

11. For instance, Beach routinely referred to African American laborers as "D.A.N.," a racist acronym that stands for "Dumb Ass N******". Upon information and belief, Beach also

referred to African Americans as "n*****s," particularly while in the company with other persons of Caucasian origin.

12. Under Beach's supervision, moreover, Caucasian employees – including those holding supervisory positions – engaged in racially offensive behavior with impunity.

13. On at least three occasions, for instance, a Caucasian foreman in the company by the name of Louis used the term "n*****" in the presence of African American employees. On one of these occasions, Louis was heard referring to his sister as a "n*****." When an African American employee by the name of Isaiah Edwards asked him why he would use such a term in reference to his sister, Louis responded that it was because she lives in "section 8 housing." He then asked, rhetorically, "why [do] ya'll," referring to African Americans, "get so mad when people use the N-word?"

14. Beach and other Caucasian employees who work for MM Gunter also routinely played on racial stereotypes. On one occasion, for instance, after two African American employees had recently lost family members in shootings, Beach told an African American employee by the name of James Taylor, whose son had recently been shot, "what's wrong with your all's people," apparently referring to the African American community. On another occasion, Beach told Mr. Taylor that a former employee would call him his "boss n*****"

15. On another occasion, a Caucasian foreman by the name of Clay asked, out loud, why "blacks like watermelon." On yet another occasion, Clay joked to a black employee who was pulling a boat with a rope that the employee was "tying up [his] own noose."

16. In fact, on two occasions in 2019, work crews supervised by Beach tied nooses on the job site and hung them from a tree. The first such occasion occurred on August 31, 2019, when

a Caucasian employee on Isaiah Edward's work crew grabbed a rope out of his work truck, tied a noose, and hung it from a tree branch on the worksite.

17. Shortly thereafter, at another worksite supervised by Beach, a member of the work crew found a stuffed purple monkey, tied a wire around its neck, and then hung it from a tree branch. Upon information and belief, the employees intended to depict an African American being hung by a noose. When Beach saw the racist image, he joined in laughing at it with several other employees, commenting to an African American employee standing next to him by the name of Reggie, "do you see that up there?"

18. These heinous actions were taken, sanctioned, and permitted, for the explicit purpose of intimidating and harassing African American employees.

## Mr. Calhoun's Employment with MM Gunter

19. Mr. Calhoun began working for MM Gunter in August 2017 as a grade laborer. On Mr. Calhoun's second day on the job, he overheard a conversation involving Beach, Louis, and another Caucasian employee, where Louis said that he either hated or couldn't stand "n*****s." Upon making the comment, Louis and Beach looked up and saw that Mr. Calhoun had been standing nearby. Louis then attempted to backpedal the comment and explained to Mr. Calhoun that he does not believe that every African American is the "N-word; just the ones that are lazy and don't want to do anything."

20. Moreover, throughout the course of his employment, Mr. Calhoun personally observed supervisors – including Beach – use some of the racial epithets and stereotypes summarized in paragraphs 11-15.

21. Notwithstanding the racially offensive work environment, during the duration of his employment, Mr. Calhoun earned a reputation at MM Gunter as a hard, diligent worker, and he was complimented by his supervisor on several occasions about his work quality and effort.

### Rex Beach Terminates Mr. Calhoun Because of His Race

22. On or around October 9, 2019, MM Gunter was fined by OSHA for a violation committed by a pipe crew on which Mr. Calhoun was not working. Each member of this pipe crew was black.

23. The following day, on October 10, 2019, Beach held a meeting with the pipe crews to inform them of the OSHA violation and suggested that employment terminations would be forthcoming.

24. That day, Mr. Calhoun and two of his coworkers were ten minutes late for their shift as a result of a traffic jam.

25. Upon reporting to the job site, Mr. Calhoun's foreman (Clay) approached him and said, "you're ten minutes late." He continued, "it's not me; Rex wants you gone." He informed Mr. Calhoun that Rex was upset about the OSHA violation and had instructed him to discharge Mr. Calhoun. He then told Mr. Calhoun that he was a "good worker" but that he had no choice but to let him go.

26. Believing there had been a misunderstanding, Mr. Calhoun then drove to the job site where Beach was working to discuss the termination decision. Mr. Calhoun asked Beach to reconsider the discharge and pointed out that others were late to work that same morning due to the traffic jam, and that a number of other laborers are routinely late for work and have not been fired for it. Beach responded, "well, to be honest with you, Clay told me he wrote you up numerous times for safety violations." Mr. Calhoun pushed back: "Clay did not tell you that; you just made

that up." Mr. Calhoun then pointed out that if Clay had written him up for safety violations, he (Calhoun) would have had to sign it, and no such documentation exists. Beach responded, "well, there was a whole lot of y'all that got fired this morning anyway." Mr. Calhoun continued to state his case, noting that a number of his coworkers who had committed misconduct while at work had been given second chances. Beach became flustered, and said, this is what's best for "you all," and walked away.

27. While walking toward his truck, Beach muttered something under his breath that sounded like "n*****."

### COUNT I: DISPARATE TREATMENT ON THE BASIS OF RACE
### (Title VII of the Civil Rights Act of 1964)

28. Calhoun incorporates the preceding paragraphs by reference.

29. MM Gunter is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

30. At all relevant times, Calhoun was an "employee" of MM Gunter within the meaning of 42. U.S.C. § 2000e(f).

31. Calhoun is an African American male.

32. Calhoun consistently performed his job at MM Gunter at a level that met or exceeded the Company's expectations.

33. Notwithstanding Calhoun's performance, MM Gunter discharged Calhoun because of his race

34. MM Gunter's actions were willful, intentional, and with malice or otherwise reckless indifference to Calhoun's right to be free from racial discrimination in his employment.

35. As a direct result of MM Gunter's unlawful discrimination, Calhoun has suffered substantial damages.

## COUNT II: DISPARATE TREATMENT ON THE BASIS OF RACE
### (42 U.S.C. § 1981)

35. Calhoun incorporates the preceding paragraphs by reference.

36. Calhoun is an African American male.

37. Calhoun consistently performed his job at MM Gunter at a level that met or exceeded the Company's expectations.

38. Notwithstanding Calhoun's performance, MM Gunter discharged Calhoun because of his race.

39. MM Gunter's actions were willful, intentional, and with malice or otherwise reckless indifference to Calhoun's right to be free from racial discrimination in his employment.

40. As a direct result of MM Gunter's unlawful discrimination, Calhoun has suffered substantial damages.

## COUNT III: HOSTILE WORK ENVIRONMENT
### (42 U.S.C. § 1981)

41. Calhoun incorporates the preceding paragraphs by reference.

42. By the events described above, and through the conduct of its supervisors, MM Gunter fostered a work environment that was racially hostile, intimidating, and offensive to African American employees.

43. MM Gunter failed to address, or otherwise take measures to prevent and correct, the hostile work environment in which Calhoun was compelled to work.

44. MM Gunter's actions were willful, intentional, and with malice or otherwise reckless indifference to Calhoun's right to be free from racial discrimination in his employment.

45. As a direct result of MM Gunter's unlawful discrimination, Calhoun has suffered substantial damages.

**PRAYER FOR RELIEF**

WHEREFORE, Burnett respectfully requests that the Court entered judgment in his favor granting him legal and equitable relief as the Court may deem just, including, but not limited to

a. front and back pay;

b. compensatory damages;

c. punitive damages;

d. reasonable attorneys' fees and costs; and

e. any other relief to which Burnett is entitled by law and to which the Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff Alvin Calhoun demands a trial by jury on all triable issues pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: December 3, 2020

        Respectfully submitted,

        */s/ Joshua L. Jewett*
        Joshua L. Jewett (VSB No. 76884)
        PIERCE MCCOY, PLLC
        101 West Main Street, Suite 101
        Norfolk, Virginia 23510
        Tel: (757) 901-4382
        Fax: (757) 257-0387
        jjewett@piercemccoy.com

        *Counsel for Plaintiff Alvin Calhoun*